UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

GRLPWR, LLC,

      Plaintiff,

v.

MELANIE RODRIGUEZ,

      Defendant.

Case No. 3:23-cv-16480-TKW-HTC

**DEFENDANT MELANIE RODRIGUEZ'S DISPOSTIVE MOTION
TO DISMISS AND FOR AWARD OF ATTORNEY'S FEES**

GRLPWR, LLC, d/b/a Nuvita brings this lawsuit for defamation *per se* and tortious interference against Ms. Rodriguez, who operates a YouTube channel, on which she posts videos commenting on matters of public concern, like multi-level marketing companies' unscrupulous business practices. The Complaint should be dismissed with prejudice because: (1) Plaintiff failed to provide presuit notice; (2) Plaintiff has not alleged a viable defamation *per se* claim; (3) the subject statements are opinion, rhetorical hyperbole, or not defamatory as a matter of law; (4) Plaintiff has failed to plead with reasonable particularity any third party to whom the statements were made; and (5) Plaintiff's tortious interference claims are barred under

the single action rule. Because this lawsuit is a SLAPP,[1] the Court should

also award Ms. Rodriguez her reasonable attorney's fees under section

768.295, Florida Statutes.

## I.   FACTUAL BACKGROUND

Melanie Rodriguez operates a YouTube channel called "You've

Reached Melanie." Compl. ¶ 15. The YouTube channel has just more than

1,000 subscribers, many videos have only dozens to several hundred

views, and the description is:

> We all knew I'd end up doing commentary! I love talking about all
> things MLM as well as their connections to religion for a double
> whammy in manipulation & bad tactics.

*See id.* (providing a hyperlink to the YouTube channel).[2] According to

Plaintiff, recently Ms. Rodriguez has "taken aim at Nuvita and its owner." *Id.*

¶ 17. According to Plaintiff, Ms. Rodriguez has referred to it as "an MLM

and derided what she claims to be its tactics." *Id.* ¶ 19. Among other things,

Plaintiff asserts that Ms. Rodriguez has called it a "commercial cult," a

"scam," that it is "scamming people, leading people to believe things that

aren't true," its owner "preys" on representatives, representatives are

"being held hostage by" Plaintiff, and that Ms. Rodriguez is aware of "evil"

---

[1] Strategic Lawsuit Against Public Participation.

[2] The Complaint leaves out the first sentence of the channel's description.

conduct by Plaintiff. *Id.* ¶ 20. Plaintiff also alleges that Ms. Rodriguez has accused Plaintiff of "homophobia" and "transphobia," *id.* ¶ 21, that it is a "disaster, a mess," and based on disclosed facts to her that "not everyone at Nuvita signed any sort of contract," *id.* ¶ 22.

The crux of Plaintiff's defamation claim, however, are the statements asserted in paragraphs 24-26 of the Complaint. *Id.* ¶¶ 45–46 (only asserting those statements as defamatory in Count I for defamation). Those statements are from 20-to-30-minute videos titled "Exposing the Truth About Nuvita" and "Shallow Dive: Nuvita" and "It Got Worse":

- "[b]ecause the products are the loophole for these, in my opinion, pyramid schemes, being considered legal, you're probably not going to make any money and that's why we didn't see it on in the beginning of this."

- "[h]ere's something interesting from the comp plan: monthly welcome kit bonus. That, in my opinion based on what I know, is a little bit pyramid schemy, it's a little scammy, because why are you getting a bonus just for recruiting people?"

- "doesn't that fall in line with what a pyramid scheme is? Hello? Hello? It's in front of your face."

*Id.* ¶¶ 24–26. Plaintiff does not provide complete context of the statements from the videos linked in the Complaint, but points to these statements in a vacuum to assert its claims.[3] Each video is addressed in turn.

---

[3] Because the videos are referenced with hyperlinks, the Court should consider the videos in their entirety at this stage.

In the first video, "Shallow Dive," the video description states: "As always this is all my opinion and the commentary I provide in these videos is from my perspective based on my experience. Please do not try to find or harass these people, that is not what we are here to do." *See* You've Reached Melanie, "Shallow Dive: Nuvita," https://www.youtube.com/watch?v=vVuC84RuRwY. When Ms. Rodriguez makes the statement identified in paragraph 24 of the Complaint, she is discussing the "cost" of becoming a representative of Nuvita and reading from Plaintiff's website:



There, Ms. Rodriguez explicitly states that Plaintiff's practices from the page referenced in the screenshot above were "considered legal," specifically pointing to the $50 option on Plaintiff's website:

> We have four welcome kit options for new reps $109, $219 and $499 kits if you would like to forego the shareable product samples and just want the digital business tools to get started we have an alternative $50 option as well and I bet that one the person who likes is sponsoring you or your upline is not going to make any or much money off of that and they might not make any since they're not selling any of the products so because the products are the loophole for these in my opinion pyramid schemes being considered legal, you're probably not going to make any money and that's why we didn't see it on in the beginning of this when they sign up for the $50 option because that would be a blatant pyramid scheme if you made money off of that so you're only making money off of the kits with the products.

(21:41-22:32).

Next, in "Exposing the Truth About Nuvita," Ms. Rodriguez pulls from Plaintiff's compensation plan and picks it apart in excerpts. When asking whether Plaintiff's welcome kit bonus was "a little bit pyramid schemy, it's a little scammy, because why are you getting a bonus just for recruiting people?," Ms. Rodriguez is reading from Plaintiff's plan, which is visible on screen to any viewer:



Finally, in "It Got Worse," Ms. Rodriguez is commenting on a social media post about a Nuvita promotion (pictured below). The post discusses a Nuvita promotion that would allow people to make "20-30% commission in addition to discounts" by "sharing what you're doing and sharing your [promo] code" after purchasing a Nuvita starter kit; that they could "refer people in and build a team" to make commissions. After reading this description of Plaintiff's business model, Ms. Rodriguez asks, "If you're getting paid for signing people up and [in handquotes] 'selling' a distributor kit, doesn't that fall in line with what a pyramid scheme is? Hello? Hello? It's in front of your face."

6



Apart from these three statements identified as the basis of Plaintiff's

defamation claim, Plaintiff also contends that other unidentified videos, and

at least one video depicting a Nuvita representative, Compl. ¶ 36, have

caused Plaintiff harm based on the "false and defamatory statements as

well as otherwise inflammatory and unsupported statements," *id.* ¶ 38. But

those statements are not the basis of the defamation *per se* claim.

As relief for its claims, Plaintiff seeks damages and injunctive relief

requiring Ms. Rodriguez to delete her YouTube videos and "refrain from

publishing similar statements in the future." Counts I-III, Wherefore

Clauses. To begin with, even if the Court does not dismiss this action, it should strike the request to prevent Ms. Rodriguez from publishing statements about Plaintiff in the future as an unlawful remedy. *Demby v. English*, 667 So. 2d 350, 355 (Fla. 1st DCA 1996) (quoting *United Sanitation Services, Inc. v. City of Tampa*, 302 So. 2d 435 (Fla. 2d DCA 1974)).

## II.   ARGUMENT

Both federal and Florida courts stress the prominent function courts play in defamation cases and favor the early dismissal of untenable claims. *See Michel v. NYP Holdings, Inc*., 816 F.3d 686, 702 (11th Cir. 2016) ("application of the plausibility pleading standard makes particular sense when examining public figure defamation suits [because] in these cases there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation"); *Byrd v. Hustler Magazine, Inc*., 433 So. 2d 593, 595 (Fla. 4th DCA 1983) (discussing the court's "prominent function" in defamation cases to "either dismiss[] the complaint for failure to state a cause of action or [ ] grant[] a directed verdict at the proof stage"). To be sure, pretrial disposition is especially appropriate in defamation cases because of "the

chilling effect" these cases have on First Amendment rights. *Karp v. Miami Herald Publ'g Co.*, 359 So. 2d 580, 581 (Fla. 3d DCA 1978).

Plaintiff's Complaint cannot survive this Court's scrutiny under Rule 12(b)(6) of the Federal Rules of Civil Procedure, and disposition of this case at the dismissal stage is appropriate. The purpose of Rule 12(b)(6) is to permit the court to terminate actions, such as this one, that are flawed from the start, to spare the litigant and the court the burdens of unnecessary pretrial and trial activity. When evaluating a motion to dismiss a court "must accept the allegations of the complaint as true and must construe the facts alleged in the light most favorable to the plaintiff." *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994). That said, a court need not accept "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "'[N]aked assertions' devoid of 'further factual enhancement'" also cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Papasan v. Alain*, 478 U.S. 265, 286 (1986) (courts are "not bound to accept as true a legal conclusion couched as a factual allegation"). Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citations omitted).

Plaintiff's claim is not plausible. In order to state a valid defamation claim under Florida law,[4] Plaintiff must plead and prove these elements: (1) a false and defamatory statement of and concerning another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and (4) damages. *Mile Marker, Inc. v. Petersen Publ'g, LLC,* 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citing *Thomas v. Jacksonville Television, Inc.*, 699 So. 2d 800, 804 (Fla. 1st DCA 1997)); *see also Readon v. WPLG, LLC*, So.3d 1229, 1235 (Fla. 3d DCA 2021), *review denied*, 2021 WL 3523557 (Fla. Aug. 11, 2021). A written publication constitutes libel *per se* under Florida law if, when considered alone and without innuendo, it: "(1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." *Alan v. Wells Fargo Bank, N.A.*, 604 F. App'x 863, 865 (11th Cir. 2015). When a libel plaintiff raises a defamation claim as actionable *per se*, it need not plead or

---

[4] Ms. Rodriguez asserts that Florida law should apply under the "most significant relationship" test because the alleged statements were made in Florida and because there is a lack of importance in Plaintiff's domicil as a national company. *Nix v. ESPN, Inc.*, 772 F. App'x 807, 810 (11th Cir. 2019).

prove malice, except when a privilege applies, or special damages. *Wolfson v. Kirk*, 273 So. 2d 774, 777 (Fla. 4th DCA 1973).

Plaintiff's Complaint fails to state a claim for which relief can be granted for several independent reasons.

**A. Plaintiff failed to comply with section 770.01, Florida Statutes.**

As alleged in the Complaint, Ms. Rodriguez runs a YouTube channel providing commentary on "multi-level marketing" companies. Compl. ¶ 15. Under Florida law, before any civil action for defamation is brought against a defendant for a publication or broadcast in a newspaper, periodical, or "other medium," the libel plaintiff must provide presuit notice in writing identifying the specific statements the plaintiff believes are false and defamatory. § 770.01, Fla. Stat.

Florida courts have found that the notice requirement under section 770.01 applies to blogs and other internet sources, the "purpose of which is the free dissemination of news or analytical comment on matters of public concern." *Plant Food Sys., Inc. v. Irey*, 165 So. 3d 859, 861 (Fla. 5th DCA 2015) (citing *Comins v. Vanvoorhis*, 135 So. 3d 545, 560 (Fla. 5th DCA 2014)) (finding a personal blog qualified as "other medium" to require presuit notice). Although some courts have concluded that the presuit notice only applies to "media defendants," the Fifth DCA in *Comins*

explained that the language cited in *Jews for Jesus, Inc. v. Rapp*, 997

So.2d 1098, 1112 (Fla. 2008)—that a prospective plaintiff "is required to

give a media defendant five days before initiating a civil action"—

necessarily meant that only media defendants were entitled to presuit

notice. *Comins*, 135 So. 3d 549-50; *Buckley v. Moore*, No. 20-CIV-61023-

RAR, 2021 WL 3173185, at *6 (S.D. Fla. July 26, 2021) (defendants were

entitled to presuit notice under section 770.01 for their articles and posts on

the blog TradingSchools.org); *cf. Mazur v. Ospina Baraya,* 275 So. 3d 812,

817 (Fla. 2d DCA 2019) (explaining that the "other medium" language

covered new technologies to disseminate news but did not expand the

reach of the statute beyond news media, but citing *Comins* and the

personal blogger as within the "broad reach" of media); *San Juan Prod.,*

*Inc. v. River Pools & Spas, Inc*., No. 8:21-CV-2469-TPB-JSS, 2023 WL

1994087, at *3 (M.D. Fla. Feb. 14, 2023) ("Rather, Defendants' blog was

operated by them as a business venture solely to help their pool

businesses make more money. To suggest that Defendants' blog was in

any way commenting or editorializing as to matters of general public

interest is ridiculous.").

A YouTube channel like Ms. Rodriguez's is no different from the blog

in *Comins*. It does not exist to compete with Plaintiff or others like the

bloggers in *San Juan Prod.*, instead, as alleged by Plaintiff, she provides commentary on MLMs. As shown by the videos at issue in the Complaint, Ms. Rodriguez investigates companies and their practices and reports on them. For that reason, the Court should conclude that the notice requirements under section 770.01, Florida Statutes apply to her YouTube channel and dismiss Plaintiff's Complaint for failing to allege compliance with the notice requirements.

**B. The statements are not defamatory *per se*.**

    **1. The statements do not impute Plaintiff with the commission of a felony.**

As explained above, there are several ways for a libel plaintiff to assert a defamation *per se* claim. *Ortega Trujillo v. Banco Cent. Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998). Here, Plaintiff asserts that Ms. Rodriguez has accused it of the commission of a crime— operating as a pyramid scheme, Compl. ¶¶ 27–34,—and that these criminal accusations were made with the intent to injure Plaintiff's business and trade, *id.* ¶ 52. Crimes characterized as having an infamous nature are "murder, perjury, piracy, forgery, larceny, robbery, arson, sodomy or buggery." *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, n.3 (S.D. Fla. 2014). If a criminal offense does not fall into one of these categories, only a felony is considered an infamous crime. *Id.*; *Madsen v. Buie*, 454 So.

2d 727, 729–30 (Fla. 1st DCA 1984) ("Under Florida law, a publication is libelous per se when it imputes to another a criminal offense amounting to a felony"). To survive a motion to dismiss, Plaintiff must prove that the statements, as read and understood by the "common mind," suggests that the Plaintiff operated a pyramid scheme punishable by a felony, as a pyramid scheme is not an enumerated "infamous" crime. *Aflalo v. Weiner*, No. 17-61923-CIV, 2018 WL 3235529, at \*3 (S.D. Fla. July 2, 2018); *Ortega Trujillo*, F. Supp. 2d at 1339. Here, Plaintiff concedes that operating a pyramid scheme is "punishable as a misdemeanor" under Florida law and nothing in the complaint supports that to the "common mind" any statement suggests any criminal conduct arising to the level of a felony. Compl. ¶ 28 (citing § 849.091(2), Fla. Stat.); *McCormick v. Miami Herald Publ'g Co.*, 139 So. 2d 197 (Fla. 2d DCA 1962) (holding that allegedly defamatory language "should not be interpreted by extremes but should be construed as the common mind would naturally understand it"). Accordingly, none of the statements—which Plaintiff all asserts are defamatory because they accuse Plaintiff of operating an unlawful pyramid scheme—are defamatory *per se*.

### 2. The statements are protected opinion and hyperbole or not capable of defamatory meaning.

Although Plaintiff's defamation *per se* claim presumes that Ms. Rodriguez has accused it of being an unlawful pyramid scheme, it does, in conclusory fashion, also assert injury to its business or trade. Because there are no facts separately ungirding this allegation, Plaintiff has failed to state a claim for injury to its business or trade under *Twombly/Iqbal*. But even if the Court were to consider whether the statements separately tended to injure Plaintiff's trade or business, it should nevertheless dismiss Count I because the three alleged statements are either not defamatory, opinion, or rhetorical hyperbole. *Murray v. Pronto Installations, Inc.*, No. 8:20-CR-824-T-24AEP, 2020 WL 6728812, at *6 (M.D. Fla. Nov. 16, 2020) (finding the context of the statements suggested they could not impute conduct "incompatible with the essential functions of [his job], when the context of the statements is considered.") (quoting *Scobie v. Taylor*, No. 13-60457-Civ, 2013 WL 3776270, at *3 (S.D. Fla. July 17, 2013).

In Florida, a libel plaintiff must demonstrate that each challenged statement conveys a defamatory meaning—something factually false and damaging to plaintiff's reputation, when given an ordinary and natural reading in context based on its plain language. *Seropian v. Forman*, 652 So. 2d 490, 495 (Fla. 4th DCA 1995). When a plaintiff merely relays

information (for instance, whether statements were "false and defamatory" or "inflammatory and unsupported," derision of "tactics," or accusations of "homophobia" or "transphobia," *see, generally*, Compl.), there is no defamatory meaning sufficient to support a claim. *See* ROBERT D. SACK, SACK ON DEFAMATION, § 2:4.1 (5th ed. 2018) ("a communication that is merely unflattering, annoying, irksome, or embarrassing, or that hurts only the plaintiff's feelings, is not actionable"); *Parekh v. CBS Corp., et al.*, 820 F. App'x 827, 833 (11th Cir. 2020) (affirming dismissal of defamation claims with prejudice where statements were not capable of defamatory meaning); *see also Rubin v. U.S. News & World Rep., Inc*., 271 F.3d 1305, 1306 (11th Cir. 2001). A statement is defamatory if it "exposes a person to distrust, hatred, contempt, ridicule or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment." *Thomas v. Jacksonville Television, Inc*., 699 So. 2d 800, 803 (Fla. 1st DCA 1997); *see also Parekh*, 820 F. App'x at 833. In other words, a defamatory statement is one that naturally and proximately injures a plaintiff's reputation in a material way. *Thomas*, 699 So. 2d at 803 (a defamatory statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.").

Similarly, "opinions cannot be defamatory." *Hoon v. Pate Construction Co*., 607 So. 2d 423, 429 (Fla. 4th DCA 1992). This concept is grounded on a very simple premise, that under the First Amendment "there is no such thing as a false idea." *See Gertz v. Robert Welch, Inc*., 418 U.S. 323, 339 (1974). "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Id*. at 339–40. The determination of whether a statement is protected opinion hinges on whether the statement is objectively falsifiable. *See Santilli v. Van Erp*, No. 8:17-cv-1797-T-33MAP, 2018 WL 2172554, at *5–6 (M.D. Fla. Apr. 20, 2018). That determination is a question of law for the court. *Nix*, 772 F. App'x at 813–14 (quoting *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018)); *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 923 (M.D. Fla. 1996) ("[W]hether the alleged defamatory word is a[] non-actionable expression of pure opinion or an actionable expression of pure fact ... is a question of law for the Court.") (citing Florida cases). To determine what constitutes "pure opinion," courts look to whether comments are made based on facts which are "otherwise known or available to the reader or listener as a member of the public." *From v. Tallahassee Democrat, Inc.*, 400 So.2d 52, 57 (Fla. 1st DCA 1981). Rhetorical hyperbole, on the other hand, is a type of

"imaginative expression" and "loose, figurative, or hyperbolic language." *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20–21 (1990). When rhetorical hyperbole is employed, the language itself "negates the impression that the writer was seriously maintaining that the plaintiff committed the particular act forming the basis of the alleged defamation." *Id. at* 21 (cleaned up).

In determining whether an allegedly defamatory statement is an expression of fact or an expression of opinion or rhetorical hyperbole, "context is paramount." *Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379–80 (S.D. Fla. 2006). Courts must evaluate an allegedly defamatory publication not by "extremes, but as the common mind would naturally understand it." *McCormick v. Miami Herald Publ'g Co*., 139 So. 2d 197, 200 (Fla. 2d DCA 1962). In other words, "the statement should be considered in its natural sense without a forced or strained construction." *Byrd*, 433 So. 2d at 595. In making such consideration, courts should

> examine the statement in its totality and the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

*From*, 400 So.2d at 57; *Horsley v. Rivera*, 292 F.3d 695, 702 (11th Cir.2002) ("In determining whether [the defendant's] statement is entitled to

protection as rhetorical hyperbole, we must consider the circumstances in which the statement was expressed."). As *From* explains, beyond the context of the statements in their totality, the medium of publication is important to determining whether the statement is opinion or hyperbole. For example, "reasonable readers of most Facebook pages do not understand posts to be conveying factual information." *Murray*, 2020 WL 6728812, at *9-10 (citation omitted).

In the defamation *per* se context, courts are constrained to look to the four corners of the publication in determining whether there is libel *per se*. *Barry College v. Hull*, 353 So. 2d 575, 578 (Fla. 3d DCA 1977). A *per se* defamation claim exists only where words "upon their face and without the aid of extrinsic proof were injurious." *Boyles v. Mid-Fla. Television Corp*., 431 So. 2d 627, 633 (Fla. 5th DCA 1983), approved, 467 So. 2d 282 (Fla. 1985) (quotations and citation omitted). Accordingly, if the court is "required to read words into the [publication] that are not there," it is not libel *per se*. *Eakin v. Rosen*, No. 7:15-CV-224, 2017 WL 5709564 (M.D. Ga. Nov. 27, 2017), appeal dismissed, 2018 WL 1580983 (11th Cir. Mar. 9, 2018) (granting judgment on the pleadings).

Here, Plaintiff identifies three allegedly defamatory statements that are cherry-picked without context from 20-to-30-minute YouTube videos.

Plaintiff also appears to identify several other quotes from videos and unidentified statements for its tortious interference claims. To begin, the failure to identify a specific statement in sufficient context is grounds for dismissal. *Scott v. Busch*, 907 So.2d 662, 667 (Fla. 5th DCA 2005); *Edward L. Nezelek, Inc. v. Sunbeam Television Corp*., 413 So. 2d 51, 55 (Fla. 3d DCA 1982) (requiring "sufficient particularity to enable the court to determine whether the publication was defamatory"); *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1328 (S.D. Fla. 2012) (plaintiff "must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred"). Accordingly, because Plaintiff constrains its defamation claim in Count I to three statements, the remaining statements in the Complaint should not be considered. When viewed in their complete context, the three statements asserted in Count I are protected opinion, rhetorical hyperbole, or otherwise not capable of defamatory meaning.

The first statement comes from the video "Shallow Dive," in which Ms. Rodriguez provides commentary on Plaintiff's business practices identified on its website. After reading the "How much does it cost to become a rep?" section of the "Frequently Asked Questions" section on Plaintiff's website, she discusses how the $50 purchase option is <u>not</u> a

pyramid scheme, but instead "considered legal." Compl. ¶ 24. She explains her opinion of what could constitute a "pyramid scheme" but explains that Plaintiff is not engaged in one: "and that's why we didn't see it on in the beginning of this when they sign up for the $50 option because that would be a blatant pyramid scheme if you made money off of that so you're only making money off of the kits with the products."

https://www.youtube.com/watch?v=vVuC84RuRwY&t=16s (21:41-22:32). Because Ms. Rodriguez is not claiming that Plaintiff is doing anything wrong in the excerpt cited in the Complaint, the statement is not capable of defamatory meaning whether or not it is provably true or false. *Hallmark Builders, Inc. v. Gaylord Broad. Co*., 733 F.2d 1461, 1464 (11th Cir. 1984) (under Florida law, "[a] false statement of fact is the sine qua non for recovery in a defamation action."). *Parekh*, 820 F. App'x at 833; *Rubin*, 271 F.3d at 1306 ("where the court finds that a communication could not possibly have a defamatory or harmful effect, the court is justified in dismissing the complaint for failure to state a cause of action").

In the complete context of the two remaining videos—including the disclaimers on the YouTube channels—Ms. Rodriguez's statements are protected speech. In the video "Exposing the Truth About Nuvita," Compl. ¶ 25, Ms. Rodriguez argues that the company is "a little scammy," "a little

21

pyramid schemy," and in the video "It Got Worse," *id.* ¶ 26, she questions whether the company's practices "fall in line with what a pyramid scheme is" after reading a description where it appears that Nuvita representatives can build commissions and revenue through assembling teams and referring individuals to buy starter kits. Those are opinions based on facts disclosed by Plaintiff. When rendering these opinions or asking these questions, Ms. Rodriguez is reviewing (and sharing with the viewer) Plaintiff's compensation plan, purchase price requirements for representatives to start selling Plaintiff's CBD products, and social media posts about representative compensation.[5] When opinions are based on facts that are in the publication or that are otherwise known or available to the reader as a member of the public, they are not actionable. *See Beck v. Lipkind*, 681 So. 2d 794, 795 (Fla. 3d DCA 1996) (citation omitted). Opinions are actionable only if they rely on undisclosed facts that prompt the opinion, which is not what Ms. Rodriguez does with these three statements. *See Turner*, 879 F. 3d at 1262; *see also Miami Children's World, Inc. v. Sunbeam Television Corp.*, 669 So. 2d 336, 336-37 (Fla. 3d DCA 1996) (reporter's characterizations constituted pure opinion whose

---

[5] The Court need not look to anything extraneous or outside the context of the YouTube videos, because, as illustrated above, Ms. Rodriguez embeds images of Plaintiff's documents she about which she is commenting in the subject videos.

basis was fully discussed within news broadcast, and thus did not constitute actionable defamation). Not only that, but even if Ms. Rodriguez were not relying on Plaintiff's own materials, the medium on which she— YouTube—negates any indicia that the statements were reasonably capable of being provably true or false. *Murray*, 2020 WL 6728812, at *9-10.

Simply because Plaintiff is capable of recitation of the definition of a pyramid scheme under Florida law or stating that Ms. Rodriguez has injured its profession by calling Plaintiff "a little bit pyramid schemy," "a little scammy," and questioning whether conduct "fall[s] in line what a pyramid scheme is," when commenting on Plaintiff's own resources, website, and compensation structure, does not eviscerate her right to render an opinion, even if Plaintiff does not like it. Courts have routinely found similar statements to be protected.[6] *See, e.g.*, *Hay v. Independent Newspapers, Inc.*, 450 So. 2d 293, 295–96 (Fla. 2d DCA 1984) (statements referring to the plaintiff as a "crook" and a "criminal" are statements of opinion); *Horsley*, 292 F.3d at 701–02 (finding statement that plaintiff was "an

---

[6] The statements are also "fair comment" subject to qualified privilege because Ms. Rodriguez is commenting on public matters—Plaintiff's compensation structure and practices on its site—which Plaintiff has voluntarily made newsworthy through its business practices. *From*, 400 So.2d at 54.

accomplice to murder" was rhetorical hyperbole); *Fortson v. Colangelo*, 434 F. Supp. 2d 1369 (S.D. Fla. 2006) (calling member of rival basketball team "thug," "thugged out," "a vacant lot," a "meaningless mass" and "gangstas or wankstas" is rhetorical hyperbole); *Colodny*, 936 F. Supp. at 924 (letter stating that author's book is a "fraud" is pure opinion); *Demby*, 667 So. 2d at 354 (letter accusing animal control director of being "inhumane" and "unreasonable" is pure opinion); *Pullum v. Johnson*, 647 So. 2d 254, 257 (Fla. 1st DCA 1994) (calling plaintiff a "drug pusher" amounted to rhetorical hyperbole, which negated impression that defendant was stating actual facts about the plaintiff); *Zorc v. Jordan*, 76 So. 2d 768 (Fla. 4th DCA 2000) (statements about mayor who "influence[d]" property values, and whose actions were "unethical" and "perhaps illegal" were protected opinions); *Turner*, 879 F.3d at 1264-66 (report finding that plaintiff engaged in "homophobic taunting" and exercised "poor judgment" was protected opinion based on the known, disclosed facts); *Donald J. Trump for President, Inc. v. The New York Times Co.*, No. 152099/2020, 2021 WL 938979, at *1 (N.Y. Sup. Ct. Mar. 9, 2021) (use of terms "deal" and "quid pro quo" to describe "unseemly" actions between Trump campaign and Russia was nonactionable opinion). Ms. Rodriguez's opinion of the facts or imaginative expression is simply not actionable.

Courts have also been clear that questions—like the ones asked here—are not generally capable of being provably true or false and do not set forth a statement of fact unless they can be "reasonably read as an assertion of a false fact." *Chapin v. Knight-Ridder, Inc*., 993 F.2d 1087, 1094 (4th Cir. 1993); *Tesla, Inc. v. Tripp*, No. 3:18-cv-00296, 2020 WL 5570983, at *14 (D. Nev. Sept. 17, 2020) (finding question could not reasonably be read as assertion of fact). For example, in *Abbas v. Foreign Pol'y Grp., LLC*, the court declined to find questions asking whether the "sons of the Palestinian president [were] growing rich off their father's system" and "ha[d] enriched themselves at the expense of regular Palestinians…" gave rise to a defamation claim. 783 F.3d 1328, 1338–39 (D.C. Cir. 2015). The court there explained that such genuine efforts to obtain information could not be defamatory and finding otherwise would "render legitimate reporting impossible." *Id.* at 1339. The YouTube videos here show that Ms. Rodriguez was investigating Plaintiff's business practices and questioning its compensation structure for its representatives. Such questioning cannot reasonably be interpreted to be an assertion of a false and defamatory fact.

Because the statements are protected speech and all would require additional explanation or context to establish the alleged defamatory nature

25

of the statement, Plaintiff cannot show any possible conclusion that these statements could constitute defamation *per se*. *Scobie*, 2013 WL 3776270, at *2-3; *San Juan Prod.,* 2023 WL 1994087, at *8.

### C. Plaintiff is required to show actual malice when because opinion and fair comment privileges apply.

Normally, a libel plaintiff must allege acts sufficient to show the defendant acted with the requisite degree of fault. When the claim is defamation *per se*, a libel plaintiff need not prove malice except when a privilege applies. *Wolfson*, 273 So. 2d at 777. Because the opinion and fair comment privileges apply here, Plaintiff is required to show actual malice. It cannot.

Where, as here, the plaintiff is a public figure, it must allege that the defendant published the statements at issue with actual malice—with knowledge of their falsity or with a reckless disregard for their truth or falsity. *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 334 (1974); *Rasmussen v. Collier Cnty. Publ'g Co*., 946 So. 2d 567, 570 (Fla. 2d DCA 2006); *Levan v. Capital Cities/ABC, Inc*., 190 F.3d 1230, 1239 (11th Cir. 1999). Plaintiff's Complaint does not meet this daunting standard.

Whether Plaintiff is a public figure is a "question of law to be determined by the court." *Mile Marker, Inc*., 811 So. 2d at 845. It is appropriate for this Court to determine Plaintiff's status as a public figure on

a motion to dismiss. *Turner*, 879 F.3d at 1271 (finding plaintiff to be a public figure and affirming dismissal); *Michel*, 816 F.3d at 706 (same). There are two categories of public figures: general purpose and limited purpose. *Turner*, 879 F.3d at 1272. "General public figures are individuals who, by reason of fame or notoriety in a community, will in all cases be required to prove actual malice." *Id.* By contrast, limited purpose public figures are those "who have thrust themselves forward in a particular public controversy and are therefore required to prove actual malice only in regard to certain issues." *Id.*; *see also Gertz*, 418 U.S. at 351. The inquiry into whether a plaintiff is a limited-purpose public figure involves three steps: (1) identifying whether there is a public controversy; (2) determining whether plaintiff played a central role in the controversy; and (3) determining whether the challenged statements were germane to the plaintiff's role in the controversy. *Friedgood v. Peters Publ'g Co*., 521 So. 2d 236, 239 (Fla. 4th DCA 1988); *Della-Donna v. Gore Newspapers Co*., 489 So. 2d 72, 76 (Fla. 4th DCA 1986).  Here, Plaintiff concedes that it is at least a limited public figure subject to the actual malice standard. Compl. ¶¶ 50–51. Even if it had not made such concession, it is a limited public figure because it operates in a highly regulated field—CBD sales—, *Green Grp. Holdings, LLC v. Schaeffer*, No. CV 16-00145-CG-N, 2016 WL 6023841, at *15 (S.D.

27

Ala. Oct. 13, 2016) (citing *Silvester v. Am. Broad. Cos., Inc.*, 839 F.2d 1491(11th Cir. 1988) for the proposition that the "highly regulated nature" of the jai alai industry underscored the "public nature of the controversy"), and because it has "voluntarily placed" itself under "public scrutiny and comment" through the business practices that Ms. Rodriguez has reported on in your YouTube channel. *Colodny*, 936 F. Supp. at 922 (quoting *Silvester*, 839 F.2d at 1494 (11th Cir.1988)).

Because Plaintiff is a public figure, it must meet the "daunting" standard of actual malice. *Klayman v. City Pages*, No. 5:13-cv-143, 2015 WL 1546173, at *40 (M.D. Fla. Apr. 3, 2015). Failure to do so will lead to dismissal of the action. *Michel*, 816 F.3d at 702 ("every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice"); *see also Turner*, 879 F.3d at 1274 (affirming dismissal of defamation case brought by limited-purpose public figure for failure to adequately plead actual malice). A plaintiff must do more than invoke the "magic words" of actual malice; failure to do so dooms a plaintiff's claim. *See, E.g., Baker v. Joseph*, 938 F. Supp. 2d 1265, 1269 (S.D. Fla. 2013). Instead, Plaintiff must "set forth facts which are legally

sufficient to establish actual malice." *Frieder v. Prince*, 308 So. 2d 132, 134 (Fla. 3d DCA 1975) (no actual malice alleged); *Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 43 (Fla. 4th DCA 2010) (there must be evidence to "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [their] publication.") (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

Plaintiff offers no evidence other than conclusory allegations that Ms. Rodriguez entertained serious doubts about her publications. In fact, one of the statements specifically argues that Plaintiff is operating legally, and not as a pyramid scheme, Compl. ¶ 24, and the other statements fail to provide evidence of any doubts about the truth of Ms. Rodriguez's statements—nor could there be, because the statements are protected opinion or hyperbole. *See id.* ¶¶ 25–26. Plaintiff's invocation of the "magic words" alone cannot by itself demonstrate the requisite degree of fault. *Readon*, 317 So.3d at 1235 (it is not merely a defendant's "failure to investigate," but her "purposefully avoid[ing] further investigation with the intent to avoid the truth," quoting *Michel*, 816 F.3d at 701–02.

The statements cannot support a finding of actual malice because they rely on Plaintiff's compensation plans, its website, and social media posts about the company's practices. A libel plaintiff cannot prove the

defendant's subjective awareness of probable falsity where the defendant's allegations "are supported by a multitude of previous reports upon which [he] reasonably relied." *Rosanova v. Playboy Enterprises, Inc.*, 580 F.2d 859, 862 (5th Cir. 1978); *Moore v. Cecil*, 488 F. Supp. 3d 1144 (N.D. Ala. 2020) (no subjective awareness of falsity by use of term "pedophile" or "child molester" in reference to Roy Moore when use was supported by prior reports of misconduct). Nothing in the Complaint suggests fabrication or falsity that rises to the level of actual malice. *St. Amant*, 390 U.S. at 732 (U.S. Supreme Court has explained, "actual malice" is generally limited to circumstances where a "story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.").

### D. Plaintiff has failed to plead publication.

To successfully plead a claim for defamation *per se*, Plaintiff must allege the "identity of the particular person to whom the remarks were made with a reasonable degree of certainty" to afford Ms. Rodriguez "enough information to determine affirmative defenses." *Aflalo*, 2018 WL 3235529, at *4 (quoting *Ward v. Triple Canopy, Inc.*, No. 8:17-cv-802-T-24 MAP, 2017 WL 3149431 (M.D. Fla. July 25, 2017); *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. 3d DCA 1981). In *Buckner*,

the court found that the plaintiff had not adequately pleaded the publication element of defamation by alleging the defamatory remarks were made to "numerous third parties on numerous occasions." 403 So. 2d at 1027–28. This was insufficient because a complaint must identify the particular person to whom remarks are made with a reasonable degree of certainty. *Id.* Similarly, in *Aflalo*, the court dismissed a claim that publication was met because a statement was put on a "Facebook wall 'for all to see'" because it failed to identified a reasonable degree of certainty as to whom the post was made. *Aflalo*, 2018 WL 3235529, at *4. Here, the Complaint has no allegation of publication, and therefore Count I must be dismissed on this basis.

### E. The tortious interference claims are barred under the single action rule.

Finally, the remaining claims must be dismissed under the "single action rule." Under Florida law, the "single action rule" provides that the publication of allegedly false and defamatory material gives rise to but a single cause of action—defamation. *Fridovich v. Fridovich*, 598 So. 2d 65, 70 (Fla. 1992); *see also Ovadia v. Bloom*, 756 So. 2d 137, 140–41 (Fla. 3d DCA 2000) (noting the single action rule "does not permit multiple actions to be maintained when they arise from the same publication upon which a failed defamation claim is based") (emphasis in original). The purpose of

the single action rule is to ensure that a plaintiff does not use alternative

tort claims to evade the requirements of defamation law, including to

circumvent the two-year statute of limitations or avoid pre-suit notice

requirements, by redescribing a defamation action as another tort.

*Fridovich*, 598 So. 2d at 69–70; *Orlando Sports Stadium, Inc. v. Sentinel

Star Co.*, 316 So. 2d 607, 608 (Fla. 4th DCA 1975) (single action rule

precludes interference claims premised upon allegedly defamatory

statements for which no presuit notice was supplied).

     The rule prevents litigants from making an end run around the

privileges, protections, and defenses available in defamation actions by

simply renaming their defamation claims as some other tort. *Orlando

Sports Stadium*, 316 So. 2d at 609; *see also Callaway Land & Cattle Co. v.

Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) ("The

rule is designed to prevent plaintiffs from circumventing a valid defense to

defamation by recasting essentially the same facts into several causes of

action all meant to compensate for the same harm" (citation omitted)).

And it prohibits defamation claims from being "re-characterized in

additional, separate counts […] if the claim arises from the same

publication." *Kamau v. Slate*, 2012 WL 5390001, at *7 (N.D. Fla. Oct. 1,

2012), report and recommendation adopted, 2012 U.S.  Dist.  LEXIS

32

158211, 2012 WL  5389836 (N.D. Fla. Nov. 5, 2012). Put simply, when a

claim overlaps with defamation, it must be treated as a defamation claim.

*Seminole Tribe v. Times Publ'g*, 780 So. 2d 310, 318 (Fla. 4th DCA 2001).

Here, the same body of facts pervades both Plaintiff's defamation and

tortious interference claims. Plaintiff claims Ms. Rodriguez tortiously

interfered through the "statements made in her videos, which include false

and defamatory statements as well as otherwise inflammatory and

unsupported statements." Compl. ¶¶ 64, 74. Because the same set of

operative facts[7] are alleged in support of Plaintiff's tortious interference and

defamation claims, they are treated as the original defamation claim,

subject to the same conditions, elements, privileges, and defenses

applicable in the law of defamation. *See Seminole Tribe*, 780 So. 2d at 318.

The "single action rule requires" dismissal of Plaintiff's extraneous claims

with prejudice. *See, e.g., Callaway Land & Cattle Co*., 831 So. 2d at 208

---

[7] Even if the Court were to consider the other statements strewn throughout the Complaint that are not at the bottom of Plaintiff's defamation claim—that Plaintiff is "scamming people" or its owner "preys" on representatives, or accusations of homophobia, etc.—those statements fail for the same reasons as above. To the extent they are even "of and concerning" Plaintiff, they are protected opinion, hyperbole, and Plaintiff has not sufficiently pleaded publication of those statements. *Five for Entm't*, 877 F. Supp. 2d at 1328. Even if the "single action rule" did not apply, these ancillary statements nevertheless could not form the basis of a tortious interference claim: tortious interference claims based on <u>statements</u> are a "defamation case in the clothing of a different tort." *Seminole Tribe v. Times Publishing*, 780 So. 2d 310, 318 (Fla. 4th DCA 2001).

(barring duplicative tortious interference claims); *Orlando Sports Stadium*, 316 So. 2d at 609 (barring duplicative tortious interference claims); *Tobinick v. Novella*, No. 9:14-cv-80781, 2015 WL 328236, at *11 (S.D.Fla. Jan. 23, 2015) (dismissing claim based on the allegedly false and defamatory statements that established defamation claim); *Klayman*, 22 F. Supp. 3d at 1256 (barring claims where plaintiff did not show "the existence of any independent facts, distinct from the subject of his defamation claim, on which he base[d] these additional claims"); *Ortega Trujillo*, 17 F. Supp. 2d at 1339 (allowing defamation claim to proceed but dismissing additional claim with prejudice because it was based on the "same facts giving rise to the claim for defamation.").

### F. Ms. Rodriguez is entitled to fees and costs under Florida's anti-SLAPP statute.

This action is a SLAPP suit. Ms. Rodriguez is therefore entitled to her fees and costs in defending this action. Florida enacted Section 768.295, Florida Statutes, to deter meritless claims aimed at silence comment and protected speech. § 768.295(1), Fla. Stat. The statute protects the "rights of free speech in connection with public issues" by shielding individuals and entities from the great expense of meritless lawsuits. *Id.* To that end, the law prohibits anyone from bringing a lawsuit (a) that is "without merit," and (b) because the defendant "has exercised the constitutional right of free

speech in connection with a public issue," which the statute defines as any written or oral statement "made in or in connection with a . . . news report, or other similar work." *Id.* at (2)(a), (3). The Florida Legislature included a fee-shifting provision in the statute that requires the court to award the defendant its reasonable attorneys' fees and costs incurred in connection with a claim that an action was filed in violation of the law. *Id.* at (4). Florida federal courts have consistently applied Florida's anti-SLAPP law to deter SLAPP lawsuits that suppress First Amendment rights. *See, e.g., Corsi v. Newsmax Media, Inc.* No. 519 F.Supp.3d 1110 (S.D. Fla. 2021) (granting defendants' fees and costs under Florida's anti-SLAPP statute which functions as a "garden variety fee shifting provision," and "does not 'answer the same question' as the Federal Rules") (citations omitted); *Bongino v. the Daily Beast Co.*, 477 Supp. 3d 1310 (S.D. Fla. 2020) (granting defendant fees and costs under Florida's anti-SLAPP statute and concluding that the statute "unequivocally" applies in federal court because it does not "conflict with any Federal Rules of Civil Procedure"); *Anderson v. Best Buy Stores L.P.*, No. 5:20-cv-41, 2020 WL 5122781, at *4 (M.D. Fla. July 28, 2020) (recommending granting a motion to dismiss and awarding the defendant reasonable fees); *Parekh*, 820 F. App'x 827.

This case meets both requirements of Florida's anti-SLAPP law. First, as detailed above, Plaintiff's lawsuit is "without merit." § 768.295(3), Fla. Stat. Specifically, the allegations do not support a defamation claim because the statements identified are not defamatory *per se* and constitute protected opinion, hyperbole, or lack defamatory meaning. Plaintiff cannot plead facts to support its defamation *per se* claim.  Second, this lawsuit arises out of the exercise of "constitutional right of free speech in connection with a public issue," *id.*, because the reporting at issue constitutes a "written or oral statement that is protected under applicable law" and was "made in or in connection with" an "audiovisual work . . . news report, or other similar work." *Id.* § 768.295(2)(a). Even if YouTube videos are not the traditional "audiovisual work" or "news report" that implicate matters of public concern, it is clear from the videos at issue that Ms. Rodriguez was engaged in reporting and commentary of Plaintiff's business, just like the other commentary she posts on similar companies. In *WPB Residents for Integrity in Gov't, Inc. v. Materio*, Judge Gross concluded in a concurrence that the "plain language of the [anti-SLAPP] statute shows that the list is non-exclusive and that it protects other similar modes for widely disseminating protected First Amendment speech." 284 So. 3d 555 (Fla. 4th DCA 2019) (citing Samuel J. Morley, Florida's

Expanded Anti-SLAPP Law: More Protection for Targeted Speakers , 90

FLA. B.J. 16, 22 (Nov. 2016) (surmising that the works are related in that

they are formats "designed to communicate to or elicit viewpoints from

members of the public on issues of public interest").

Under these circumstances, an award of reasonable attorneys' fees

and costs is appropriate. § 768.295(4), Fla. Stat.

## III.    CONCLUSION

For all these reasons, Ms. Rodriguez respectfully asks that the Court

grant this motion, dismiss Plaintiff's Complaint with prejudice, and

determine that Ms. Rodriguez is entitled to her reasonable attorney's fees

and costs under Florida's anti-SLAPP statute.

Dated: July 9, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
SLATER LEGAL PLLC
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

*Attorneys for Defendant*

**Local Rule 7.1(F) Certification**

Pursuant to Local Rule 7.1(F), I hereby certify that the foregoing

document contains fewer than 8,000 words, inclusive of headings,

footnotes, and quotations, but exclusive of the case style, signature block

and certificates.

By: */s/ James M. Slater*
        James M. Slater


**Certificate of Service**

I hereby certify that on July 9, 2023, I electronically filed the foregoing

document with the Clerk by using the CM/ECF system, which will serve a

copy on all counsel of record.

By: */s/ James M. Slater*
        James M. Slater