## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**GRLPWR, LLC,**
**a Michigan limited liability company,**

      **Plaintiff,**

                              **Case No.: 3:23-cv-16480-TKW-HTC**

**v.**

**MELANIE MAE RODRIGUEZ,**
**an individual**

      **Defendant.**

_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, GRLPWR, LLC d/b/a Nuvita ("Nuvita"), hereby submits this Response in Opposition to the Motion to Dismiss filed by Defendant, Melanie Rae Rodriguez. Based on the foregoing, Defendant's Motion must be denied.

## I.    INTRODUCTION

Plaintiff filed a three count Complaint against Defendant on June 26, 2023, asserting causes of action for defamation *per se*, tortious interference with contractual relationships, and tortious interference with business relationships. Doc. 1 (Compl.). The Complaint plainly and sufficiently sets forth allegations to support each and every cause of action as required by this Court and controlling law. Defendant's motion lacks merit and should be denied in total.

II.    **STANDARD OF REVIEW**

When considering a motion to dismiss, the Court must accept all allegations of fact as true and construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 235 (1974); *Lopez v. First Nat'l Bank of Fla.*, 129 F.3d 1186, 1189 (11th Cir. 1997).  In addition, "on a Rule 12(b)(6) motion to dismiss[,] the pleadings are construed broadly ...." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).  Plaintiff's claims should be dismissed only when it appears to be a certainty that they would not be entitled to relief under any state of facts that could be proven in support of their claims. *Solis-Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1429 (11th Cir. 1985).

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, the allegations in the complaint must contain enough factual matter to establish "plausible," as opposed to merely "possible" or "speculative," entitlement to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-66 (2007) (citations omitted).  Plausible entitlement of relief exists when the complaint's allegations traverse the threshold separating the "conclusory" from the "factual" and the "factually neutral" from the "factually suggestive." *Id*. at 1966 n.5.

III.   **ARGUMENT**

Defendant's arguments meander through numerous different arenas. These include her allegations that: (a) Plaintiff did not satisfy a notice requirement under

2

Section 770.01, Fla. Stat., that only applies to media entities rather than this private individual who posts videos on YouTube; (b) Defendant's repeated criminal accusations do not constitute a colorable claim for defamation *per se*; (c) opinion and fair comment privileges apply; (d) Plaintiff is a "public figure," and thus is subject to the "actual malice" standard; (e) the publicly-available YouTube video postings, which have been viewed hundreds of times, have not been published; (f) the "single-action rule" applies to this lawsuit that involves many different actions and several different theories of liability; and (g) Florida's anti-SLAPP law applies. None of these points merit the relief requested.

A.     <u>**Florida Law Does Not Require Plaintiff to Provide Notice to Defendant Prior to Filing Suit**</u>

Defendant first contends that Plaintiff failed to comply with Section 770.01, Florida Statutes, which requires a plaintiff to serve notice to a defendant at least 5 days before filing suit "for a publication or broadcast, in a newspaper, periodical, or other medium, of a libel or slander."  Fla. Stat. § 770.01.  "Florida courts have interpreted section 770.01 to apply only to news media, i.e., the press."  *Mazur v. Baraya*, 275 So. 3d 812, 815 (Fla. 2d DCA 2019); *see also Zelinka v. Americare Healthscan, Inc.*, 763 So. 2d 1173, 1175 (Fla. 4th DCA 2000) ("Every Florida court that has considered the question has concluded that the presuit notice requirement applies only to 'media defendants,' not private individuals."); *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1327 (S.D. Fla. 2012) ("Florida courts have

recognized that the statute does not apply to private parties or nonmedia defendants."). Defendant, a private individual who posts videos on YouTube, is not the "news media" or a "media defendant."

Defendant certainly is not a newspaper or periodical. Thus, she relies on the statute's "other medium" language to argue it applies. Florida courts interpret this term "to be limited to news media defendants who publish statements via an 'other medium.'" *Mazur*, 275 So. 3d at 817. Who qualifies as a "media defendant" turns on "whether the defendant engages in the traditional function of the news media, which is to initiate uninhibited, robust, and wide-open debate on public issues." *Id.*; *see also Mancini v. Personalized Air Conditioning & Heating*, 702 So. 2d 1376, 1380 (Fla. 4th DCA 1997) (noting that the term "non-media defendant" was meant to "separate third parties who are not engaged in the dissemination of news and information through the news and broadcast media from those who are so engaged").

Per the *Mazur* court, "even though the 'other medium' language expanded section 770.01 to cover new technologies used to disseminate the news, such as internet publishers and blogs, it did not expand the reach of the statute beyond the news media." *Mazur*, 275 So. 3d at 817. In particular, it held that because Section 770.02 (regarding retractions) mentions only newspapers, periodicals, and broadcasts, "it becomes clear that the 'other medium' language is not meant to expand the scope of section 770.01 beyond the news media." *Id.* at 817-18.

4

*Mazur* did acknowledge the proliferation of new technologies which offer a wider range of options to access content from the news media. *See generally id*. at 818-19. Specifically, it noted that "[m]any people get their news via Facebook, YouTube, Twitter, Instagram, LinkedIn, or Reddit." *Id.* at 818. But it did not proclaim that any of these platforms constitute "other medium" under Section 770.01. Instead, it stated that "[w]hether the presuit notice protection under section 770.01 should have a wider reach in light of recent technological developments is a matter for the Florida legislature to decide." *Id.* at 819. *Mazur* thus supports this Court not requiring Plaintiff to provide notice. Rather, this Court should also defer to the Florida legislature to decide the scope of Section 770.01.

The Fourth District Court of Appeal's decision in *Zelinka* supports Plaintiff's position. 763 So. 2d at 1174. It involved an individual who posted on a Yahoo! internet message board, the messages on which were disseminated among millions of people every day. *Id.* The Court focused on the facts that the defendant (1) was a private individual, and (2) "merely made the statements on a website owned and maintained by someone else." *Id.* at 1175. It concluded that the defendant was a non-media defendant and that Section 770.01 did not apply.

*Five for Entertainment S.A.* involved a well-known singer posting a press release on his personal website as well as another party's website. 877 F. Supp. 2d at 1327. The court found no evidence that the websites disseminated "traditional

news," but opined that even if the press release "constituted news," that would render the defendants "members of the news media." *Id.* Because "private parties with their own websites" released the allegedly defamatory information on one occasion, Section 770.01 did not apply. *Id.*

More recently, the Southern District of Florida denied a motion to dismiss due to lack of notice by a defendant who accused the plaintiff of being a member of a terrorist organization via his YouTube channel, which had 180,000 viewers. *Sirer v. Aksoy*, Case No. 21-cv-22280-BLOOM/Otazo-Reyes, 2021 U.S. Dist. LEXIS 204653, at *8, *12 (S.D. Fla. Oct. 22, 2021). The court declined to so expand the interpretation of "media defendant," even though this defendant "use[d] various internet platforms to share information and receive real-time feedback." *Id.* at *12.

Plaintiff relies heavily on two decisions from Florida's Fifth District Court of Appeals to support its argument: *Comins v. Vanvoorhis*, 135 So. 3d 545 (Fla. 5th DCA 2014), and *Plant Food Sys., Inc. v. Irey*, 165 So. 3d 859 (Fla. 5th DCA 2015). In *Comins*, the court affirmed a summary judgment ruling that the plaintiff should have provided notice under Section 770.01 where the owner and operator of an award-winning blog titled "Public Intellectual" posted about a widely covered shooting of a dog. *Comins*, 135 So. 3d at 547-58. The court appeared to rely on the student's qualifications as a doctoral student in sociology, who also had bachelor's and master's degrees in sociology. *Id.* at 548, 559. It drew a qualitative distinction

between those entitled to notice and those not so entitled, championing the "many outstanding blogs on particular topics, managed by persons of exceptional expertise, to whom we look for the most immediate information on recent developments and on whom we rely for informed explanations of the meaning of these developments." *Id.* at 559.  By contrast, it acknowledged that "[o]ther blogs run the gamut of quality of expertise, explanation and even-handed treatment of their subjects."  *Id.*  It cautioned that "[w]e are not prepared to say that all blogs and all bloggers would qualify for the protection of section 770.01, Florida Statutes, but we conclude that VanVoorhis' blog, at issue here, is within the ambit of the statute's protection as an alternative medium of news and public comment."  *Id.* at 559.

Thus, in *Comins* it appears that the defendant's expertise and education, as well as the public's reliance on his newsworthy blog posts, led the court to find the blog met its qualitative standard.  In *Plant Food Systems*, which relied only on *Comins*, the Fifth DCA found that Section 770.01 applied to "an internet publisher of scientific and technical journals . . . [who] was in the business of publishing scholarly articles worldwide."  165 So. 3d at 859, 861.  At least one Florida federal court has distinguished *Comins*, recognizing that "[s]ome Florida courts have recognized a narrow exception for so-called 'blogs,'" but clarifying the exception as limited to "ones that are engaged in the dissemination of news and information." *San Juan Prods. v. River Pools & Spas, Inc.*, Case No. 8:21-cv-2469-TPB-JSS, 2023

U.S. Dist. LEXIS 25030, at *7-8 (M.D. Fla. Feb. 14, 2023) (finding Section 770.01 inapplicable on summary judgment).

Here, Defendant is not a media defendant pursuant to Florida law.  She is a private individual who posts videos on YouTube, a website she does not own. Neither the Complaint nor Defendant's Motion to Dismiss identify any expertise, qualifications, or other particular characteristic of her videos that would require this Court to deem her a "media defendant."  The public does not rely on her videos for newsworthy events, and there are no allegations that she provides news or information in the same sense as would a journalist, or that her YouTube videos are akin to the author of a scientific journal such as in *Plant Food Systems*.

Defendant argues that because "she provides commentary on MLMs" and "investigates companies and their practices and reports on them," Section 770.01 should apply.  *See* Doc. 7 (Mot.) at 12-13.  But the case law cited does not support this qualifying as a "media member."  The *Comins* case, with its subjective qualitative standard, involved an individual that court deemed extremely qualified. Moreover, the blog posts in *Comins* involved news items also reported by traditional media outlets such as newspapers and television stations.

Finally, Plaintiff has identified no law in Florida where a private individual offering her opinions on certain companies to a few thousand people via a YouTube channel equates to finding that individual a media defendant.  Instead, as *Mazur*

8

cautioned, the legislature could expand the express ambit should it so choose.  But until it does, this Court would make new law by expanding its reach that far.  Plaintiff respectfully submits that Section 770.01 does not apply to Defendant and did not require Plaintiff to provide notice prior to filing suit.  Therefore, the Court should not dismiss Plaintiff's Complaint on this basis.[1]

### B.    Defendant's Repeated Criminal Accusations Directed to Plaintiff's Business Practices Support a Defamation *Per Se* Claim

Plaintiff amply alleges the elements required of a defamation *per se* claim in Count I.  A cause of action for defamation in Florida consists of the following elements: "(1) the defendant published a false statement (2) about the plaintiff (3) to a third party and (4) that the falsity of the statement caused injury to the plaintiff." *Bass v. Rivera*, 826 So. 2d 534, 535 (Fla. 2d DCA 2002).  "Slander may be defined as the speaking of base and defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood." *Spears v. Albertson's, Inc.*, 848 So. 2d 1176, 1179 (Fla. 1st DCA 2003).  Here, the Complaint alleges that Defendant published false statements accusing Plaintiff of operating a pyramid

---

[1] Should the Court disagree on this point, Plaintiff requests that the Court afford it one of two options: (1) dismiss without prejudice and with leave to amend, *Bayliss v. Cox Radio, Inc.*, No. 8:10-CV-1030-T-27MAP, 2010 U.S. Dist. LEXIS 111758, at *8, *11-12 (M.D. Fla. Oct. 13, 2010), or (2) dismiss without prejudice and with leave to refile the complaint. *See Gifford v. Bruckner*, 565 So. 2d 887, 888 n.1 (Fla. 2d DCA 1990).

scheme to viewers via YouTube videos which have injured Plaintiff.  Plaintiff has pleaded all of the required elements of its claim for defamation.

Furthermore, Plaintiff has adequately alleged defamation *per se* against Defendant.  Statements that charge another with commission of a crime are actionable *per se*.  *Id.*; *see, e.g., Bass*, 826 So. 2d at 535 (statement imputing to another a felony); *Axelrod v. Califano*, 357 So. 2d 1048, 1050 (Fla. 1st DCA 1978) (statements that plaintiff was a thief and a forger).  Under Florida law, a plaintiff may sue for defamation *per se* where a publication (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (4) tends to injure one in his trade or profession.  *Blake v. Ann-Marie Giustibelli, P.A.*, 182 So. 3d 881, 884 (Fla 4th DCA 2016).

Here, Defendant's Motion only deals with the first of these grounds, whereas it disregards final two (the second inapplicable) and paragraphs 46 through 56 (at least) of the Complaint.  In doing so, Defendant stakes her argument on the mistaken notion that perpetrators of pyramid schemes—which is exactly what Defendant accuses Plaintiff of doing—cannot be charged with an infamous crime.

This is plainly wrong.  A perpetrator of a pyramid scheme can be charged with an infamous crime.  The Complaint sufficiently identifies some examples of

Defendant's predicate statements to support a *per se* defamation action pursuant to this accusation:

24.  On April 10, 2023, Rodriguez posted a video to her YouTube channel titled "SHALLOW DIVE: NUVITA #exhunreacts #antimlm." *See* https://www.youtube.com/watch?v=vVuC84RuRwY&t=16s. In this video, she stated that "[b]ecause the products are the loophole for these, in my opinion, ***pyramid schemes***, being considered legal, you're probably not going to make any money and that's why we didn't see it on in the beginning of this." *Id.* at 22:10-22:23 (emphasis added).

25.  On June 9, 2023, Rodriguez posted a video to her YouTube channel titled "EXPOSING THE TRUTH ABOUT NUVITA #nuvita #exhunreacts #antimlm." *See* https://www.youtube.com/watch?v=jFiWnHRTVPM. In this video, she stated "[h]ere's something interesting from the comp plan: monthly welcome kit bonus. That, in my opinion based on what I know, is a little bit ***pyramid schemy***, it's a little scammy, because why are you getting a bonus just for recruiting people?" *Id.* at 30:22-30:35 (emphasis added).

26.  On June 9, 2023, Rodriguez posted a video to her YouTube channel titled "IT GOT WORSE #nuvita #exhunreacts #antimlm." *See* https://www.youtube.com/watch?v=H0JPb2SWDUA. In this video, she again made unsupported allegations about Nuvita, "doesn't that fall in line with what a ***pyramid scheme*** is? Hello? Hello? It's in front of your face." *Id.* at 25:23-25:32 (emphasis added).

*Id.*

Defendant then ignores the other allegations in this Count, including those found at ¶¶ 47, 48, 52, 53, and 56, that are vital for the Court's determination on this Motion to Dismiss:

47.   Rodriguez's statements as alleged in paragraphs 24 through 26 impute to Nuvita criminal misconduct.

48.   Rodriguez's statements as alleged in paragraphs 24 through 26 necessarily impute to Nuvita conduct and characteristics incompatible with the proper exercise of its lawful business and trade.

***

52.   Rodriguez published the statements alleged in paragraphs 24 through 26 with the intent to injure Nuvita in its lawful business and trade.

53.    Rodriguez's statements as alleged in paragraphs 24 through 26 were false and defamatory as they were injurious to Nuvita and its business and would tend to deter third parties from doing business with Nuvita.

***

56.   Rodriguez's statements as alleged in paragraphs 24 through 26 have caused injury to Nuvita in its lawful business and trade.

*Id.*   These allegations suffice to plead a cause of action for defamation *per se*.

## 1.   Defendant's Accusations that Plaintiff is Running a Fraudulent Pyramid Scheme Support a Defamation *per se* Claim under the Felony Crime Element

As an initial matter, the Court may quickly dispose of Defendant's argument that accusations of fostering a pyramid scheme do not impute felonious conduct. While it is true that operating a pyramid scheme in Florida could be prosecuted as a misdemeanor under § 849.091(2), Fla. Stat., *see* Doc. 1 (Compl.) ¶ 28, the crime is also punishable as a felony under the ambit of Florida's general lottery statute, §

12

849.09, Fla. Stat.  As explained by Florida's First District Court of Appeal in *State v. Croy*, 813 So. 2d 993 (Fla. 1st DCA 2002):

> The decision in *Adams* does not support Mr. Croy's contention in the present case that the misdemeanor provision addressed to pyramid schemes, section 849.091, removes pyramid schemes from the purview of the general lottery statute, section 849.09, altogether. The explicit language in section 849.091(1) declaring that pyramid schemes ("organization of any . . . pyramid club") are lotteries places pyramid schemes within the ambit of the general felony lottery statute, excepting only such conduct as the misdemeanor statute proscribes itself.

*Id.* at 995.  Thus, Defendant's "pyramid scheme" allegations accuse Plaintiff of operating a business that can be prosecuted as a felony under Florida law.

Florida law is not, however, the only state that matters for this inquiry. Defendant's YouTube videos can be viewed nationally and the harm from those false statements can be felt nationally.  In Michigan, where Plaintiff is domiciled, the law specifically provides a person that promotes a pyramid scheme is guilty of a felony:

> (1) A person shall not promote or participate in a pyramid promotional scheme. A limitation as to the number of individuals who may participate or the presence of additional conditions affecting eligibility for the opportunity to receive compensation under a plan or operation does not change the identity of the plan or operation as a pyramid promotional scheme.

> (2) A person that promotes a pyramid promotional scheme is guilty of a felony punishable by 1 or more of the following:(a) Imprisonment for not more than 7 years (b) A fine of not more than $10,000.00 per violation.

Mich. Comp. Laws Serv. § 445.258.  Legislatures in other states have passed similar laws that allow perpetrators of pyramid schemes to be prosecuted as felons.  *See,*

13

*e.g.,* Ga. Stat. 16-12-38(b)(3) ("Any person who establishes, promotes, or operates a pyramid promotional scheme shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one nor more than five years."); Idaho Code Ann. § 18-3101(4) ("Any person, or any agent or employee thereof who willfully and knowingly promotes, offers, advertises, or grants participation in a pyramid promotional scheme shall be guilty of a felony."); N.M. Stat. § 57-13-7 ("Any person violating the Pyramid Promotional Schemes Act shall be deemed guilty of a fourth degree felony and shall be sentenced to a term of imprisonment . . ."); N.C. Gen. Stat. § 14-291.2 ("A person who establishes or operates a pyramid distribution plan is guilty of a Class H felony.").

Federal law similarly provides that promoters of pyramid schemes may be prosecuted for felony crimes to include mail fraud, in violation of 18 U.S.C. § 1341, and money laundering, in violation of 18 U.S.C. § 1957.  In the case of *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 475 (6th Cir. 1999), the Sixth Circuit affirmed convictions under these statutes where defendants were accused of operating an illegal pyramid scheme related to marketing plans that defendants argued were legal "multi-level marketing" programs. *Id.*  The court approved the *Kascot* definition of "pyramid scheme" as adopted from the Federal Trade Commission's opinion in *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106 (1975), which enjoined the defendants from, *inter alia*:

> 2. Offering, operating, or participating in, any marketing or sales plan or program wherein a participant is given or promised compensation (1) for inducing other persons to become participants in the plan or program, or (2) when a person induced by the participant induces another person to become a participant in the plan or program, *Provided*, That the term "compensation," as used in this paragraph only, does not mean any payment based on actually consummated sales of goods or services to persons who are not participants in the plan or program and who do not purchase such goods or services in order to resell them.

*Id.*   The court further surveyed how different district courts throughout the country supplement the *Koscot* test to reflect the difference between legitimate multi-level marketing and illegal pyramids and Ponzi schemes, finding that "many states prohibit only those schemes that compensate participants primarily for the recruitment of new participants, or that are based primarily on the recruitment of new participants, as opposed to sales of goods or service." *Id.* at 483.

Applying these statutes and precedent, Defendant's statements in which she accuses Plaintiff of running a pyramid scheme more than suffice to support a claim of defamation *per se* under a felony crime theory. The Motion should be denied.

### 2. Defendant's Accusations of Running a Fraudulent Pyramid Scheme do not Qualify for Opinion or Hyperbole Protection

Defendant's second argument asks the Court to find as a matter of law that Defendant's accusations are pure opinions that could never support a defamation claim. This argument is contrary to the law. In Florida, persons accused of defamation can seek First Amendment free speech protections for pure opinions in

15

situations that are not present here.  *Hay v. Independent Newspapers, Inc.*, 450 So.2d 293, 295 (Fla. 2d DCA 1984).  Mixed opinions, however, are not subject to the same protections.  *Id.*  Defendant made allegations that Plaintiff engaged in a specific type of conduct: a "pyramid scheme."  At its core, this is a factual allegation regarding Plaintiff's actions, and it falsely alleges criminal conduct by Plaintiff.

"Pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public. Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication."  *From v. Tallahassee Dem.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981).  The court in *From* explained:

> In sum, the test to be applied in determining whether an allegedly defamatory statement constitutes an actionable statement of fact requires that the court examine the statement in its totality and the context in which it was uttered or published. The court must consider all the words used, not merely a particular phrase or sentence. In addition, the court must give weight to cautionary terms used by the person publishing the statement. Finally, the court must consider all of the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published.

*Id.* at 57.

In this case, no such protections apply.  Defendant did not make a "pure opinion" statement—she directly stated that Plaintiff is operating a pyramid scheme.

For example, in one video, she states that "[b]ecause the products are the loophole for these, in my opinion, ***pyramid schemes***, being considered legal, you're probably not going to make any money and that's why we didn't see it on in the beginning of this." Doc. 1 (Compl.) at ¶ 24.  In yet another she states, "That, in my opinion based on what I know, is a little bit ***pyramid schemy***, it's a little scammy, because why are you getting a bonus just for recruiting people?"  *Id.* at ¶ 25.  In her most recent statement, she claims: "[D]oesn't that fall in line with what a ***pyramid scheme*** is? Hello?  Hello?  It's in front of your face."  *Id.* at ¶ 26.  Yet, Defendant's allegation that Plaintiff is operating a pyramid scheme is false.  *Id.* at ¶¶ 30-34.

Courts have repeatedly found that accusations of operating a "pyramid scheme" constitute actionable defamation, including defamation *per se*.  In *Dardashtian v. Gitman*, 17 Civ. 4327 (LLS), 2017 U.S. Dist. LEXIS 196271 (S.D.N.Y. Nov. 28, 2017), a plaintiff alleged in its complaint that a defendant made a false statement that the plaintiff's company "operated a 'pyramid scheme.'"  *Id.* at *23.  The Southern District of New York denied the defendant's motion to dismiss, finding that the plaintiff "plead[ed] facts that, if true, constitute defamation per se." *Id.* at *23-24.  Similarly, a California federal court found that statements accusing a plaintiff of having "created a pyramid scheme" and "scammed his students" were "susceptible to defamatory meaning by accusing [him] of illegal conduct." *Toufanian v. Oreffice*, CV 19-7934-DMG (SSx), 2021 U.S. Dist. LEXIS 188923, at

*13-14 (C.D. Cal. July 16, 2021).  It found such statements "capable of being proven true or false" and that "[a] reasonable reader could therefore conclude that Defendants were asserting facts, not merely their opinion."  *Id.* at *14-15.  S*ee also Int'l Galleries, Inc. v. La Raza Chi., Inc.*, Case No. 05 C 4991, 2007 U.S. Dist. LEXIS 83319, at *26-27 (denying summary judgment to defendant and finding statement that suggested that the plaintiff's business was "quite similar" to certain "famous pyramid schemes" that statement was actionable because "when considered in context and afforded its natural and obvious meaning, [it] is not reasonably susceptible of an innocent construction").

Recognizing that courts must evaluate an allegedly defamatory publication not by "extremes, but as the common mind would naturally understand it," *McCormick v. Miami Herald Publ'g Co*., 139 So. 2d 197, 200 (Fla. 2d DCA 1962), Defendant's statements do not qualify as pure opinion.  A common mind's natural understanding of these statements is, in Defendant's words, "in front of [their] face." A common mind would understand Defendant's words to mean that Plaintiff is—as she puts it—"pyramid schemy," "scammy," and using a "loophole" to operate a pyramid scheme.  Doc. 1 (Compl.) ¶¶ 24–26.  Then, just in case any viewer doubts the sincerity of her accusations, she confirms this "truth":

> "If you are still part of Nuvita and unfortunately happened upon my videos, and you're feeling some upsetti spaghetti feelings, that is the correct feeling to have because part of the grieving process is anger and

> acceptance of what I'm saying may be true, and you and I both know
> the truth, don't we?"

*Id.* at ¶ 39.  These are not excepted pure opinions; they are direct factual accusations

that Defendant cloaks with her air of inside knowledge about the company and, in

her words, "the truth."  *See id.*  Plaintiff's Complaint meets the pleading requirement

demanded of this claim.

Defendant also argues that her "pyramid scheme" allegations are based

directly off Plaintiff's website and, therefore, are based on facts set forth in the

publication.  This is a stretch too far that does not find support in the case law.  "Pure

opinion occurs when the defendant makes a comment or opinion based on facts

which are set forth in the article or which are otherwise known or available to the

reader or listener as a member of the public."  *From*, 400 So. 2d at 57.  However, a

speaker cannot invoke a "pure opinion" defense if the facts underlying the opinion

are false or inaccurately presented.  *See Zambrano v. Devanesan*, 484 So. 2d 603,

606 (Fla. 4th DCA 1986) (stating that the pertinent question is "whether the speaker

accurately presented the underlying facts of the situation before making the allegedly

defamatory remarks."); *see also Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19,

111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990) (holding that even if the speaker states the

facts upon which he bases his opinion, the statement may still imply false assertions

of fact if those facts are incorrect, incomplete or the speaker's assessment of the facts

is erroneous).

"The Supreme Court has recognized that 'even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.  Simply couching such statements in terms of opinion does not dispel these implications.'" *Lrx, Inc. v. Horizon Assoc. Joint Venture*, 842 So. 2d 881, 885 (Fla. 4th DCA 2003) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990)). Rather "one looks to the totality of the statement, the context in which it was published, and the words used to determine whether the statement is pure or mixed opinion." *Id.*

In *Lrx, Inc.*, Florida's Fourth District Court of Appeals reversed an order setting aside a jury verdict finding defamation where statements accused an attorney of the unauthorized practice of law.  *Id.* at 886.  It found that from these statements, the jury could conclude that the plaintiff was a "loathsome, dishonest character who cannot be trusted by clients."  *Id.*  Therefore, even if true statements also were found in the letter, a genuine issue existed regarding the defendant's motives.  *Id.*  Also, the court found that the defendant's purpose could have been to destroy trust in the plaintiff.  *Id.*  This improper motive led the court to reinstate the jury's verdict for the plaintiff.  *Id.*

Here, Defendant presents few facts in the videos, and certainly nothing that would encompass the type of fair disclosure contemplated by these cases.  Although

Plaintiff disagrees that at this early stage the Court should engage in a factual analysis of Plaintiff's videos, Defendant's arguments based on "context" in the videos nevertheless do not support her position.  In her Motion, she attempts to cast her statements as the result of her analysis and "investigation" of Plaintiff, including her representations of select documents from Plaintiff's website.  *See* Doc. 7 (Mot.) at 20-25.  She thus acknowledges these statements are not mere opinions.  Yet, she does not accurately or completely describe Plaintiff's business.  Moreover, for the claim she alleges is mere "opinion"—that Nuvita is a "pyramid scheme"—she never offers any definition, facts, or other information regarding what amounts to a pyramid scheme.  Defendant fails to cite any law suggesting that a YouTube personality can fall back onto the entire body of the world wide web as a basis to claim that viewers are imputed with knowledge from any and all websites, laws, or other information.  Such a finding would be contrary to common sense and the law. Because Plaintiff is not a pyramid scheme and does not operate a pyramid scheme, *see* Doc. 1 (Compl.) ¶¶ 28-35, the falsity of her factual statements are fatal to her Motion.

This is not, as cited by Defendant in *Miami Children's World, Inc. v. Sunbeam Television Corp.*, 669 So. 2d 336, 336-37 (Fla. 3d DCA 1996), a case in which a news reporter discloses all facts and then presents a take on those facts.  This is also not a case like in *Hay v. Independent Newspapers, Inc.* 450 So. 2d 293, 295–96 (Fla.

2d DCA 1984), where a defendant sued a newspaper for publishing a letter from a private citizen who expressed dismay that a local prosecutor dropped criminal charges.  Rather, the substance of Defendant's statements is that she repeatedly accused Plaintiff of operating "scammy" and "pyramid schemy" business practices. Doc. 1 (Compl.) ¶¶ 24–26.  To remove any doubt about the reason for a viewer's "upsetti spaghetti feelings," Defendant confirms that "what I'm saying may be true, and you and I both know the truth, don't we?" *Id.* at ¶ 39.  This statement, directed at those who are "still part of Nuvita," demonstrates Defendant's plain motive: to persuade Nuvita employees and representatives to leave the company.

These are not statements of innuendo, pure opinion, or harmless speculation. They are actionable as defamation and the Motion should be denied.

### 3. Defendant's Accusations Also Qualify as Defamation *Per Se* Beyond the Imputation of Criminal Conduct

Regardless of how the Court rules on the prior aspects of this argument, the Complaint alleges facts sufficient to establish the third and fourth manners of showing defamation *per se*.  In addition to criminal activity, actionable claims for defamation *per se* arise when statements about a person *"tend to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury,"* or "impute to another characteristics or conditions incompatible with the proper exercise of one's business, trade, profession or office." *Spears*, 848 So. 2d at 1179.

22

Defendant has made accusations that Plaintiff is running a criminal enterprise, an unethical business, and is scamming its representatives.  This subjects Plaintiff to hatred, distrust, ridicule, contempt, or disgrace, as Plaintiff has alleged in the Complaint.  Moreover, Defendant unquestionably intends for these accusations to directly injure Plaintiff's trade or profession by calling into question its business practices.  Thus, Plaintiff has pled defamation *per se* under additional avenues of the claim.  As such, the Motion should be denied.

### C.   Plaintiff is Not a Public Figure and Need Not Show Actual Malice

For the third of her seven arguments, Defendant argues that Plaintiff is a limited purpose public figure[2] subject to the "actual malice" standard.  This nominal argument appears to consist of two points: (1) Plaintiff "concedes" this status, and (2) Plaintiff "operates in a highly regulated field—CBD sales" and has "'voluntarily placed' itself under 'public scrutiny and comment' through the business practices" alleged by Defendant.  Doc. 7 (Mot.) at 27-28.  Neither point comes close to establishing Plaintiff's status as a limited purpose public figure.

Defendant's first argument, that Plaintiff "concedes" its status as a limited purpose public figure, is not a serious argument.  Defendant cites to paragraphs 50 and 51 of the Complaint in which Plaintiiff alleges, respectively, that Defendant published the statements at issue "without regard for their truth or falsity," Doc. 1 ¶

---

[2] Defendant does not argue that Plaintiff is a general purpose public figure.

50, and "intentionally, with malice, and with such lack of care as to constitute a conscious indifference to Nuvita's rights or welfare," *id.* at ¶ 51.  By alleging these facts, Plaintiff does not admit anything, and especially does not obligate itself to a higher standard than the law requires.  Rather, Plaintiff alleges Defendant's state of mind.

Defendant's second argument attempts to allege facts that Plaintiff is a limited purpose public figure.  To properly determine whether a plaintiff is a limited public figure, a court must: (1) isolate the public controversy, (2) examine the plaintiffs' involvement in the controversy, and (3) determine whether the alleged defamation was germane to the plaintiffs' participation in the controversy.  *Silvester v. Am. Broad. Corp.*, 839 F.2d 1491, 1494.  Defendant's argument meets none of these.

For the first prong, "a public controversy must be more than merely newsworthy," but rather must "affect people who do not directly participate in it." *Id.* at 1494-95.  It also must preexist the alleged defamatory statements.  *See id.* at 1495.  In addition, "the plaintiff must have been a public figure prior to the publication of the particular defamatory speech which is the issue of the litigation." *Id.* at 1496.  "[T]he press entity which publishes the defamatory material cannot make a previously private individual into a public figure merely by flooding the public with many articles about the Plaintiff."  *Id.*

Defendant does not articulate a public controversy in its Motion. Arguing that Plaintiff "operates in a highly regulated field—CBD sales" does not indicate the existence of any controversy. Defendant does not allege any facts to enable the Court to find a public controversy exists, that there is anything newsworthy about a "CBD sales" controversy, or that such controversy affects people who do not participate in the controversy. The Complaint does not allege that the CBD sales industry is "highly regulated," nor does Defendant offer any support for this bare assertion (which assertion Plaintiff disputes). The same goes for Defendant's allegation that Plaintiff's "business practices" constitute a public controversy. In the Complaint, the only allegation of an individual who considers Nuvita's business practices a controversy is Defendant, which cannot serve to unilaterally create a public controversy.

For the second prong, "the plaintiff either (1) must purposely try to influence the outcome of the public controversy, or (2) could realistically have been expected, because of his position in the controversy, to have an impact on its resolution." *Sylvester*, 839 F.2d at 1496. Defendant does not plead facts that Plaintiff attempted to influence, or could have been expected to influence, either alleged controversy. The Complaint does not allege any such facts, nor do any alleged facts support a finding that Plaintiff has a "special prominence" within any controversy. *Gubarev v. Buzzfeed, Inc.*, 354 F. Supp. 3d 1317, 1329 (S.D. Fla. 2018). No pleaded facts

support a claim that Plaintiff was "a prominent member of the industry at issue," the CBD sales industry. *Carroll v. TheStreet.com*, Case No. 11-CV-81173-RYSKAMP/HOPKINS, 2014 U.S. Dist. LEXIS 156499, at *39 (S.D. Fla. July 10, 2014).

Finally, Defendant's defamatory statements accusing Plaintiff of operating and directing an illegal "pyramid scheme" are not germane to a hypothetical public controversy regarding "CBD sales." They have nothing to do with the CBD sales industry, but rather only Plaintiff's alleged business practices. And the alleged controversy they relate to—"the business practices that Ms. Rodriguez has reported on in [her] YouTube channel"—has no supporting allegations of a controversy.

For the foregoing reasons, Defendant cannot demonstrate that Plaintiff is a limited public figure, and the Court should not apply the "actual malice" standard.

### D.   Plaintiff Sufficiently Alleges Publication

Defendant argues that Plaintiff failed to allege publication by failing to "identify the particular person to whom the remarks were made with a reasonable degree of certainty to afford Ms. Rodriguez enough information to determine affirmative defenses." Doc. 7 (Mot.) at 30. Defendant has ample information in this regard, because she made the defamatory statements in videos she posted to her YouTube channel, which states it has "1.26K subscribers." Doc. 1 ¶ 15-17, 24-26. Moreover, the video screenshots Defendant included in her Motion to Dismiss show

that her videos have received "likes," which demonstrate they were viewed by third parties. *See, e.g.,* Doc. 7 (Mot.) at 4, 6, 7. In addition, a visit to each of the videos located at the domain names set forth in the Complaint show that each of the videos containing defamatory statements have been viewed hundreds of times, and include comments from individuals who have viewed the videos.

Thus, the Complaint alleges that Defendant published the videos to numerous individuals who subscribe to her page, viewed the videos, and liked and/or commented on the videos. Absent discovery, Plaintiff has no way to know the identities of all such individuals, but Defendant certainly can determine their identities. The Complaint suffices to allege that Defendant published the statements to third parties and the Court should not dismiss on this basis.

### E.   <u>The Single Action Rule Does Not Apply</u>

Plaintiff's tortious interference claims in Counts II and III should also proceed. Florida courts will not dismiss tortious interference claims where they allege factually different conduct from the defamation claim. *See Geller v. Von Hagens*, No. 8:10-cv-1688-EAK-AEP, 2011 U.S. Dist. LEXIS 62435, 2011 WL 2434217, at *4 (M.D. Fla. June 13, 2011) (denying summary judgment on a tortious interference claim where the plaintiff's claim was based on conduct separate from the defamation claim).

Here, Defendant's argument ignores the allegations as pled.  Plaintiff is not alleging one single defamatory statement as the sole predicate foundation for each of the three counts.   Instead, Plaintiff incorporates into each count different statements, actions, viewer populations, states of mind, and/or damages.   While Plaintiff identifies three particular statements as verbatim examples of Defendant's defamatory statements, Plaintiff also alleges numerous other statements and conduct as the basis for Plaintiff's tortious conduct.[3]  *See* Doc. 1 (Compl.) ¶¶ 17-22, 35-42.

Furthermore, Defendant directs her videos and statements to a variety of viewers, including Nuvita's employees, representatives, and customers.  She seeks to cause them to break their contracts and relationships with Nuvita and simply cease doing business with Nuvita altogether.  Her intent is made clear by her statement that anyone still with Nuvita who gets "upsetti spaghetti feelings" from watching her videos now has the "correct feeling."  *Id.* at ¶ 39.  Count 2 and Count 3 are directed at different populations of viewers and seek different damages.  Thus, this "single action" rule does not apply and the Motion should be denied.

---

[3] Defendant's conduct that constitutes tortious interference appears to reach further than merely the videos at issue.  From her possession and reference to internal Nuvita videos and communications, it appears Defendant has communicated directly with Nuvita employees or representatives.  It thus stands to reason that she has made additional statements and engaged in additional conduct with these individuals that stands independent of the videos presented in the Complaint.

Finally, Defendant is incorrect that Plaintiff cannot seek injunctive relief. Florida courts will enjoin activities which "constitute or are incident to conduct which constitutes intentional interference with potentially advantageous business relationships" where "the rights thus tortiously violated are entitled to be protected by intervention in the form of a temporary injunction." *Zimmerman v. D.C.A. at Welleby, Inc.*, 505 So. 2d 1371, 1376 (Fla. 4th DCA 1987). Counts II and III, as well as the relief they seek, should stand.

## F.   <u>Florida's Anti-SLAPP Law Does Not Apply</u>

Lastly, Defendant is not entitled to attorney's fees or costs under Florida's anti-SLAPP statute, Section 768.285, Florida Statutes. Plaintiff did not file this case to suppress Defendant's exercise of her right to free speech. Indeed, out of the litany of Defendant's attacks on Plaintiff, Plaintiff directed its defamation claim at three specific categories of statements in which Defendant accused Plaintiff of criminal activity. Plaintiff has previously laid out the arguments for why this Court should not dismiss the Complaint.

The scope of Florida's anti-SLAPP statute does not lack boundaries. Rather, it only prohibits filing suit "without merit and ***primarily because*** such person has exercised the constitutional right of free speech." Fla. Stat. § 768.295(3) (emphasis added); *see also Gov't Emps. Ins. Co.*, 2022 U.S. Dist. LEXIS 119301, at *28. The anti-SLAPP statute "provides only for 'attorney fees and costs incurred in

connection with *a claim that* an action was filed in violation of this section'—in other words, fees and costs incurred in connection with the SLAPP motion itself." *Berisha v. Lawson*, 378 F. Supp. 3d 1145, 1157 n.8 (S.D. Fla. 2018).

Florida courts have repeatedly determined that it would be "premature" to grant an anti-SLAPP request at the motion to dismiss stage of litigation. *Markle v. Markle*, Case No. 8:22-cv-511-CEH-TGW, 2023 U.S. Dist. LEXIS 55418, at *33-34 (M.D. Fla. Mar. 30, 2023)(citing *Bosshardt v. Drotos*, 351 So. 3d 257, 258 (Fla. 1st DCA 2022) (Long, J. concurring) ("[W]e see that proving an action is 'without merit' and filed 'primarily' because the defendant exercised a protected right will naturally be difficult in a motion to dismiss looking only to the face of the complaint.")).  This is true not only because it is difficult to determine the merits of an anti-SLAPP argument, but also because a plaintiff could potentially amend its complaint to state a claim, even if it failed to do so on its initial attempt. *Markle*, 2023 U.S. Dist. LEXIS 55418, at *34.

Here, Defendant's anti-SLAPP argument fails because: (1) Plaintiff initiated the suit for a proper purpose, and (2) Plaintiff's suit is meritorious. *See Gov't Emps. Ins. Co. v. Right Spinal Clinic, Inc.*, Case No. 8:20-cv-0802-KKM-AAS, 2022 U.S. Dist. LEXIS 119301, at *29 (M.D. Fla. July 6, 2022); *see also Grippa v. Rubin*, Case No. 4:20cv457-MW/MAF, 2021 U.S. Dist. LEXIS 211827, at *15 (N.D. Fla. Feb. 22, 2021) ("As explained in this Order, Plaintiff's lawsuit is not without merit.  For

these reasons, Defendant is not entitled to fees and costs pursuant to Florida's anti-SLAPP law."). Plaintiff has outlined the basis for the Court to deny Defendant's Motion to Dismiss because it has sufficiently alleged claims for defamation and tortious interference.

Moreover, so long as "at least some" of a plaintiff's causes of action have merit, an anti-SLAPP claim will be denied. *Gov't Emps. Ins. Co.*, 2022 U.S. Dist. LEXIS 119301, at *28; *Pierre-Paul v. ESPN Inc.*, Case No. 16-21156-Civ-COOKE/TORRES, 2016 U.S. Dist. LEXIS 119597, at *4 (S.D. Fla. Aug. 29, 2016) ("Finally, Defendant's request for attorney's fees under Florida's Anti-SLAPP statute, *see Fla. Stat. § 768.295*, is denied. Assuming the statute applies, this suit plainly has merit."). And even when only some of a plaintiff's allegations of defamation survive a motion to dismiss, the anti-SLAPP statute does not apply. *See Grippa*, 2021 U.S. Dist. LEXIS 211827, at *15. For these reasons, the Court cannot determine that anti-SLAPP applies, particularly at this stage of the litigation.

## IV.    **CONCLUSION**

Based on the foregoing, the Court should dismiss Defendant's Motion to Dismiss in full.

Alternatively, should this Court find that the Complaint fails to satisfy any of the applicable pleading requirements, Plaintiff respectfully seeks leave of Court to amend its Complaint pursuant to Fed. Civ. R. 15(a).

*/s/ John R. Zoesch III*
**JOHN R. ZOESCH III**
Fla. Bar No. 0045257
jrz@beggslane.com
**MATTHEW P. MASSEY**
Fla. Bar No. 1008337
mpm@beggslane.com
**BEGGS & LANE, RLLP**
501 Commendencia Street
Pensacola, Florida 32502
T: (850) 432-2451
F: (850) 469-3331
*Attorneys for Plaintiff GRLPWR, LLC*

*****

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT REQUIREMENT OF LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), the undersigned certifies that this memorandum contains 7,614 words, including headings, footnotes, and quotations, but not including the case style, signature block, or any certificate of service.

*****

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2023, a true and correct copy of the foregoing has been furnished via electronic mail through the CM/ECF System for the Northern District of Florida, which will send notice of the electronic filing to all counsel of record.

*/s/ John R. Zoesch III*
John R. Zoesch III
Florida Bar No. 0045257

32